54 CCPA

**Application of Donald L. ELBERT, James G. Sims and Gerald W. Sovereign.**

**Patent Appeal No. 7706.**

United States Court of Customs and Patent Appeals.

March 9, 1967.

Roger Hansel, John H. Lewis, Jr., Ellsworth H. Mosher, Washington, D. C. (Stanley M. Tarter, Pensacola, of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

WORLEY, Chief Judge.

The sole issue here is whether the Board of Appeals committed reversible error in affirming the examiner's rejection of claims 8–17 in appellants' application,[1] entitled "Textile Filaments and Spinnerets For Their Production," as "unpatentable" over certain prior art under 35 U.S.C. § 103. Our review of the record with due regard for appellants' arguments satisfies us that no such error appears.

The invention relates to a spinneret plate to be used in the melt spinning of textile filaments. Melt spinning involves forcing melted polymer under pressure through tiny holes, or orifices, in a spinneret plate. Even though the extrusion orifices be non-circular in cross section,

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 147,770, filed October 26, 1961.

surface tension forces tend to draw the molten streams emerging from the outlet side of the plate into a circular cross section before it can solidify to form continuous filaments. The feature of appellants' spinneret plate which is asserted to be nonobvious is that the extrusion orifices thereof are bounded in part by arcs of a catenary.[2] Ideally, the filaments produced from appellants' spinneret plate exhibit an exact polygonal cross section, viz triangular or pentagonal. As a practical matter, a filament of "trigonal" cross section produced by appellants has slightly convex sides and rounded or blunted apexes, while a "pentagonal" filament has concave sides and rounded apexes. As a result of its plurality of longitudinal facets and the concomitant opportunity for internal reflection, the filament possesses high luster, brilliance and sparkle.

The subject matter is reflected in claim 8:

8. A spinneret plate for use in melt spinning filaments exhibiting a substantially polygonal cross section of at least three sides comprising a solid plate having a melt face and an extrusion face and having at least one orifice extending between said faces to provide a passageway for molten polymer, said orifice defined by a bounding wall having a form at the extrusion face determined by at least three inwardly projecting lines assuming at their closest approach to the center of said orifice the curve of catenary arcs.

2. The term "catenary" defines a curved line of certain characteristics, just as the term "circle" does. The solicitor's brief points out:

> * * * Webster's New Collegiate Dictionary defines * * * [catenary] as "The shape assumed by a perfectly flexible cord in equilibrium under given forces * * * exemplified in a chain or heavy cord hanging freely between two points of support." It is evident from this example that a whole family of catenaries may be suspended from the same two points of support, depending on the length of cord. * * *

The references are:

Hazell     1,902,953   March 28, 1933.
Holland    2,939,202   June 7, 1960.
British      779,822   July 24, 1957.
Italian      546,143   July 12, 1956.

Hazell observed that surface tension tends to cause an extruded filament to draw into a circular cross section configuration in wet spinning processes. To counteract that tendency, Hazell employs spinneret orifices (Fig. 1) having "outwardly concave sides" and "cusped corners" to produce "filaments

having cross sections the boundaries of which are straight lines," such as "triangles," squares or "polygons." The "use of longer cusps and more deeply concaved sides" produces filaments having "small cusps and somewhat concave sides." The patentee observed that various factors in addition to the shape of the spinneret orifice determine the cross section of the fiber produced, among which are the pressure on the polymer material and the rate at which the material is withdrawn from the face of the spinneret.

Holland employs a spinneret plate having orifices generally resembling a triangle (with rounded corners and arcuate-

In the orifice shown in appellants' Fig. 1, numerals 2, 3 and 4

F I G. I.

denote the catenary arcs joining the sides of the three slots or legs.

ly indented sides consisting of arcs of circles) to produce a trilobal filament having convex sides, rounded apexes and high luster.

British discloses the use of branched orifices "consisting of a plurality of narrow elongated slots of equal length radiating from a common central aperture" for melt spinning non-circular filaments. According to British, "The sides of the re-entrant angles forming the indentations [between branches] may be straight or curved or have the form of a sickle or any other shape, as required for different purposes." The pentagonal filament produced, as illustrated in the reference, appears to have concave sides and rounded apexes.

Italian employs spinnerets in which the orifices are "preferably branched, more particularly stellate" to offset the tendency of the filament to assume a circular cross section. The adjacent branches of the orifice appear joined by a curve resembling a circular arc. (Fig. 2)

Fig. 2

Like Hazell, the Holland, British and Italian patents all recognize that filament shape is a function of process conditions as well as orifice shape.

The board agreed with the examiner's application of the references to the appealed claims, stating:

\* \* \* the slight change in design in appellants' spinneret as compared with those of the references would be obvious to one having ordinary skill and knowledge in this art. There is no evidence in this record by way of a proper side by side comparison wherein the only variable is the spinneret shape demonstrating the claimed spinneret, including catenary arcs, to exhibit different and unexpected properties from those of the reference spinnerets.

Concededly no reference expressly describes the use of catenary arcs to join the sides of a multi-branched orifice. Appellants do concede that the catenary curve which joins the branches of their orifice "would differ from other curved surfaces—for example, circular—by only an extremely difficultly measurable and minute amount," and that "an artisan might experimentally vary the shape of the orifice by providing arced portions of differing shape." Appellants have presented no evidence or argument which convinces us that the catenary arc employed by them to connect branches of the orifice is significant or critical, or is anything more than one of numerous curves a person of ordinary skill in the art would find obvious for that purpose, ultimately to provide filaments having cross sections resembling polygons.

The decision is affirmed.

Affirmed.

SMITH, Judge (concurring).

The record shows that the Board of Appeals here consisted of an examiner-in-chief and two acting examiners-in-chief. Appellants do not challenge the legality of that board. For the reasons expressed in my dissenting opinion in In re Wiechert, 370 F.2d 927, 54 CCPA ——, the decision of such a board in my view is a legal nullity. However, I must accept the majority's view on this issue in the Wiechert case, i. e., the legality of the board is not an issue here. I therefore participate in the merits of this appeal and in so doing, agree with the conclusion of the majority.